## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEWJERSEY

ERIK KERTESZ,

                    Plaintiff,

          v.

COLONY TIRE, SCOTT CREIGHTON,
CHARLES CREIGHTON, JOHN and JANE
DOES 1-10 and ABE CORPS. 1-10,

                    Defendants.

Hon. Jamel K. Semper, U.S.D.J.
Hon. James B. Clark, III, U.S.M.J.
Civil Action No. 2:24-cv-08419-JKS-JBC

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

---

JACKSON LEWIS P.C.
200 Connell Drive
Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200
*Attorneys for Defendants*

Of Counsel:
Joseph C. DeBlasio (Bar ID #018081996)

On the Brief:
Joseph C. DeBlasio (Bar ID #018081996)
Michael A. Tecza (Bar ID #0335572021)

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................3

LEGAL ARGUMENT ...............................................................................................5

POINT I ....................................................................................................................5

    THE PROPOSED AMENDED COMPLAINT IS UNTIMELY AND FUTILE........................................................................................................5

        A. The Entire Controversy Doctrine Bars The Proposed Amended Complaint..................................................................................................6

            1. Plaintiff's Complaint Does Not Encourage The Comprehensive And Conclusive Determination Of A Legal Controversy..................................................................................7

            2. Plaintiff's Complaint Does Achieve Fairness.......................................8

            3. Plaintiff's Complaint Does Not Promote Judicial Efficiency.......................................................................................9

        B. Plaintiff's Proposed Amendments To His Claim For Tortious Interference With Prospective Employment Opportunity (Count One) Is Futile Because It Remains Conclusory And Speculative..................10

        C. NJWPL Claims (Counts Two Through Four) And Unjust Enrichment (Count Five) Have Been Waived By Plaintiff ...........................14

        D. Plaintiff's LAD Claims Of Retaliation (Count Six) And Wrongful Discharge (Count Seven) Are Barred By The Doctrine Of Res Judicata And Time Barred ................................................................16

POINT II ................................................................................................................18

    ALLOWING AMENDMENT WOULD BE UNDULY PREJUDICAL TO DEFENDANTS AT THIS JUNCTURE...............................................................18

CONCLUSION.......................................................................................................19

i

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Adams v. Gould, Inc.*,
   739 F.2d 858 (3d Cir. 1984)....................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................11, 12, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2001)................................................................................11, 12, 14

*Christianson v. Cold Indus. Operating Corp.*,
   486 U.S. 800 (1988)..................................................................................16

*Cogdell v. Hosp. Ctr. at Orange*,
   116 N.J. 7 (1989) ............................................................................... *passim*

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
   252 F.3d 267 (3d Cir. 2001)..................................................................13

*Daramy v. AG of the United States*,
   365 F. App'x 351 (3d Cir. 2010) ..........................................................16

*Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*,
   237 N.J. 91 (2019) ..................................................................................6

*Ditrolio v. Antiles*,
   142 N.J. 253 (1995) ...............................................................................8

*Fishbein Family P'ship. v. PPG Indus., Inc.*,
   871 F. Supp. 764 (D.N.J. 1994) ...........................................................18

*In re Frazier*,
   435 N.J. Super. 1 (App. Div.), *certif. denied.* 220 N.J. 98 (2014)...........6

*Grayson v. Mayview State Hosp.*,
   293 F.3d 103 (3d Cir. 2002)..................................................................5

*Great W. Mining & Mineral Co. v. Fox Rothchild LLP*,
   615 F.3d 159 (3d Cir. 2010)..................................................................5

*Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*,
   354 N.J. Super. 229 (App. Div. 2009) ..................................................9

*Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*,
   207 N.J. 428 (2011) ...............................................................................9

*Lorenz v. CSX Corp.*,
  1 F.3d 1406 (3d Cir. 1993) .................................................................................14

*Mystic Isle Dev. Corp. v. Perskie & Nehmad*,
  142 N.J. 310 (1995) ..........................................................................................6

*Notte v. Merchs. Mult. Ins. Co.*,
  185 N.J. 490 (2006) ........................................................................................18

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
  116 N.J. 739 (1989) ...................................................................................11, 12

*Sani-Pure Food Labs., LLC v. Biomerieux, Inc.*,
  2014 U.S. Dist. LEXIS 160536 (D.N.J. Nov. 13, 2014) ................................11

*Sbeih v. Twp. of E. Brunswick*,
  2013 U.S. Dist. LEXIS 41219 (D.N.J. Mar. 20, 2013) ..................................12

*St. Thomas-St. John Hotel & Tourism Ass'n Inc. v. U.S.*,
  357 F.3d 297 (3d Cir. 2004) .....................................................................15, 16

*Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs*,
  2011 U.S. App. LEXIS 10103 (3d Cir. 2011) ................................................5

**Other Authorities**

Federal Rule of Civil Procedure 8 ...........................................................................11

Federal Rule of Civil Procedure 8(a)(2) ..................................................................11

Federal Rule of Civil Procedure 12(b)(6) ........................................................ *passim*

Federal Rule of Civil Procedure 15(a) .....................................................................5

New Jersey Court Rule 4:30A ...................................................................................6

## PRELIMINARY STATEMENT

Plaintiff seeks leave to amend his Complaint under the guise of "clarifying" and "strengthening" his claims. But the proposed amendments do nothing of the sort. Rather, they leave intact the same fatal defects that require dismissal of the original pleading. Indeed, the first 110 paragraphs of the Proposed First Amended Complaint ("Proposed FAC") were copied verbatim from Plaintiff's earlier (and still pending) lawsuit against these same Defendants, *Kertesz v. Colony Tire*, No. 20-cv-12364 ("*Kertesz 1*"), and bear no connection whatsoever to the claims asserted in this action.

In this case, after five years of litigation in *Kertesz 1* arising out of Plaintiff's employment with the Defendants, and the termination of that employment in 2019, Plaintiff now asserts seven causes of action: (1) tortious interference with prospective employment; (2) violation of the New Jersey Wage Payment Law for failure to pay wages; ("NJWPL"); (3) violation of the New Jersey Wage Payment Law for unlawful deductions; (4) NJWPL retaliation due to Plaintiff's alleged complaints about wage practices; (5) unjust enrichment; (6) retaliation under the New Jersey Law Against Discrimination ("NJLAD"); and (7) wrongful termination under the NJLAD. *See* Proposed FAC, attached as **Exhibit A** to the Certification of Michael A. Tecza, Esq. ("Tecza Cert.").

The Proposed FAC is futile for multiple reasons. It fails to remedy the numerous legal and factual deficiencies identified in Defendants' pending motion to dismiss. Whether the Court evaluates Plaintiff's original Complaint or the Proposed FAC, the result is still dismissal as a matter of law.  For five years, Plaintiff has asserted new claim after new claim.  In *Kertesz 1*, Plaintiff's first motion to amend the Complaint was denied as untimely.  Two years later, Plaintiff attempted to amend the Complaint again.  When the Court suggested the motion would likely be

denied as untimely, Plaintiff took the same failed claims and asserted them in a new lawsuit, frustrating many policies and common-law doctrines in the process. In *Kertesz 1*, discovery is finally closed and the parties' respective motions for summary judgment have been decided by the Court, further streamlining the claims at issue. Now, Plaintiff is looking to undo that past five years of litigation and start all over again with a bucket full of new claims, as though the first action does not exist.

But *Kertesz 1* does exist. **And under New Jersey's Entire Controversy Doctrine, *all* of Plaintiff's claims belong in *Kertesz 1*, not in a separately filed, duplicative lawsuit**. Courts in this State do not permit parallel actions between the same parties arising from the same operative facts. Additionally, Count One fails because it rests entirely on conjecture, not facts. Counts Two through Five merely recycle wage-related allegations Plaintiff already attempted, without any success, to inject into *Kertesz 1*, and are now precluded by *res judicata*. Counts Six and Seven, based on alleged NJLAD retaliation and wrongful discharge, are both untimely and likewise barred as previously rejected in *Kertesz 1*.

In short, the Proposed FAC does nothing to cure the core defects previously identified by Defendants and already recognized by the Court. Plaintiff still alleges no facts capable of plausibly supporting any of his claims, and he still cannot assert any new, timely, legally viable causes of action.

For all these reasons, and those set forth in greater detail below, Plaintiff's motion for leave to amend should be denied in full, and Defendants' pending motion to dismiss should be granted.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a former employee of Defendant Colony Tire, managed during the relevant period by Defendants Charles and Scott Creighton. His employment ended in November 2019. In August 2020, Plaintiff commenced *Kertesz 1*, asserting five causes of action: three counts of common-law invasion of privacy (one against each defendant), a claim for failure to accommodate under the NJLAD, and an aiding-and-abetting claim under the NJLAD. Defendants properly removed that action to this Court based on diversity jurisdiction.

In October 2022, Plaintiff filed his first motion for leave to amend the complaint in *Kertesz 1* to add a claim under the Employee Retirement Income Security Act ("ERISA"). The Court denied that motion due to procedural deficiencies. Two months later, in December 2022, Plaintiff filed another motion seeking leave to amend, this time correcting the procedural issues and adding even more proposed claims, including those under the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the NJLAD. In its June 28, 2023 written opinion, the Court denied the motion for leave to amend, finding that Plaintiff had been aware of the underlying facts supporting these claims since his November 2019 discharge. Indeed, several of the proposed claims had already appeared in his EEOC charge, filed before *Kertesz 1* was commenced. The Court found that Plaintiff's substantial delay in bringing these claims was unjustified and therefore denied leave to amend the Complaint.

Undeterred, Plaintiff attempted yet another motion for leave to amend two years later in 2024, this time asserting a new set of proposed claims, all based on facts that indisputably existed at the time of Plaintiff's separation in 2019 and at the time of the original pleading in 2020. During a status conference, the Honorable James B. Clark, III, U.S.M.J., questioned Plaintiff's counsel as to why such an untimely motion should be permitted after the Court had previously denied a similar

attempt on the same grounds two years earlier. Following that exchange, Plaintiff promptly withdrew the motion for leave to amend, recognizing that it too would be denied as untimely.

Plaintiff then repackaged the claims from his withdrawn motion and filed them as a brand-new lawsuit in the Superior Court of New Jersey, Law Division, Essex County. That case was removed to this Court on diversity grounds and is the subject of Defendants' pending motion to dismiss, which invokes the Entire Controversy Doctrine, *res judicata*, and Fed. R. Civ. P. 12(b)(6). *See* D.E. 4. Faced with that motion, Plaintiff now seeks yet another amendment—this time adding still another new LAD-based claim. But the proposed amendments do nothing to rescue his pleading. They rest on the very same facts and theories already deemed untimely in *Kertesz 1* and cannot cure the legal defects requiring dismissal. For these reasons, Plaintiff's latest effort to amend should be rejected in full, and Defendants' pending motion to dismiss should be granted.

# LEGAL ARGUMENT

## POINT I

### THE PROPOSED AMENDED COMPLAINT IS UNTIMELY AND FUTILE

Generally, leave to amend pursuant to Federal Rule of Civil Procedure 15(a) should be freely given unless the Court finds that the moving party acted with (1) undue delay; (2) bad faith; or (3) dilatory motive; or (4) the amendment is futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Courts liberally grant amendments but will deny leave to amend where the amendment is motivated by bad faith or where it would be unduly prejudicial to the opposing party. *See Adams v. Gould, Inc.*, 739 F.2d 858, 868-69 (3d Cir. 1984). Additionally, in determining futility, the Third Circuit has adopted a relatively simple process: if the complaint, as amended, would fail to state a claim upon which relief could be granted, then the proposed amendment should be rejected. *See Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs*, 2011 U.S. App. LEXIS 10103, at *8-9 (3d Cir. 2011) (quoting *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010). Thus, the standard for assessing futility is the same standard of legal sufficiency as applied under Fed. R. Civ. P. 12(b)(6). *Great W. Mining & Mineral Co. v. Fox Rothchild LLP,* 615 F.3d 159, 175 (3d Cir. 2010).

In this case, the Proposed FAC should be rejected on multiple grounds. First, the Complaint cannot stand due to the Entire Controversy Doctrine, which requires these claims to be made a part of *Kertesz 1*. Second, the Proposed FAC is futile and would not save the claims from dismissal on the grounds set forth in Defendants' already-filed motion to dismiss. Nothing in the Proposed FAC can change the facts that: many of the claims are time-barred, or barred by the doctrine of *res judicata* as a result of the proceedings in *Kertesz 1*; and the claims as pleaded do not state any valid cause of action. Additionally, the background facts and procedural history demonstrate that

5

the filing of this separate lawsuit is nothing more than an effort to circumvent the Entire Controversy Doctrine and pull off an end-run around the Court's prior Orders in *Kertesz 1*, which already concluded that the claims in the Proposed FAC are unjustifiably late. It has now been almost six and one-half years since the date Plaintiff's employment was terminated. If it is too late for Plaintiff to add these allegedly new found claims into *Kertesz 1* by amendment, then it is certainly far too late for Plaintiff to add them by avoiding *Kertesz 1* through the filing of an entirely new lawsuit.

### A. The Entire Controversy Doctrine Bars The Proposed Amended Complaint

As explained in Defendants' already-filed motion to dismiss Plaintiff's Complaint, the entirety of Plaintiff's original Complaint (and the Proposed FAC) is subject to dismissal under the Entire Controversy Doctrine. The Supreme Court of New Jersey has expressly held that the State of New Jersey has a strong public policy requiring "adjudication of a legal controversy [to] occur in **one** litigation in only **one** court." *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*, 237 N.J. 91, 108 (2019) (citations omitted) (emphasis added). The Entire Controversy Doctrine provides a "mandatory rule for the joinder of virtually all causes, claims and defenses related to a controversy between the parties engaged in litigation." *Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7, 16 (1989); *see also* New Jersey Court Rule 4:30A. In other words, all aspects of a single controversy between those who are parties to the litigation must be included in a single action, or they are barred. *See In re Frazier*, 435 N.J. Super. 1, 8-9 (App. Div.), *certif. denied*. 220 N.J. 98 (2014).

Ultimately, the principle underlying the Entire Controversy Doctrine is one of fairness to the parties while allowing for judicial economy and efficiency. *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 322 (1995) ("The objectives behind the doctrine are threefold: (1) to

encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial efficiency by avoiding fragmented, multiple and duplicative litigation."). Here, Plaintiff's Proposed FAC represents the culmination of a longstanding pattern of repetitive, fragmented, and strategically manipulated legal actions arising from the same operative facts. Plaintiff's attempt to resurrect and re-file the same claims as a new Complaint in State Court was more than just procedurally improper; it stands in direct contravention of the principles underlying the Entire Controversy Doctrine.

1. *Plaintiff's Complaint Does Not Encourage The Comprehensive And Conclusive Determination Of A Legal Controversy*

"The comprehensive and conclusive determination of a legal controversy is an important objective of the entire controversy doctrine." *Cogdell*, 116 N.J. at 22. "While not always isolated or identified as a discrete goal of the doctrine, the values inherent in that objective have been consistently endorsed." *Id.* Moreover, a "disposition that reflects only a partial glimpse of the merits, or that results from the participation of some but not all of the major or important parties to the legal contest, or that resolves only a segment of the controversy does not fully effectuate the judicial ideal of complete, not piecemeal, adjudications." *Id.* at 23.

Stated another way, separate but concurrent litigation in federal and state court, arising out of the same exact operative facts, with the same or related theories of recovery, flies in the face of having a comprehensive, just and conclusive disposition of the entire controversy in one legal action. The unavoidable reality is that Plaintiff seeks to pursue a new lawsuit with the sole purpose of circumventing binding judgments and to drag Defendants through costly and repetitive litigation. There simply is no good reason to allow Plaintiff to prosecute a separate lawsuit arising out of the exact same alleged facts as the still-pending action in *Kertesz 1*.

2. *Plaintiff's Complaint Does Not Achieve Fairness*

"Fairness in the application of the entire controversy doctrine focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication." *Ditrolio v. Antiles*, 142 N.J. 253, 277 (1995); *Cogdell, at* 23 (1989) ("party fairness is critical in the application of the Entire Controversy Doctrine."). Here, Plaintiff was fully aware of the alleged conduct of the Defendants when he initiated *Kertesz 1* in 2020.

For example, in support of Plaintiff's various NJWPL claims (Counts Two through Five of the Proposed FAC), Plaintiff alleges that, "Until the issue surrounding Plaintiff's FMLA leave compensation was explored and **discovered in Scott Creighton's deposition** [in *Kertesz 1*], Plaintiff was unaware that he was supposed to be compensated through his regular pay for his work from August 15, 201, to November 11, 2019, and not through his vacation. *See* Proposed FAC, ¶ 67. This claim is patently false. Tellingly, long prior to Scott Creighton's deposition took place, Plaintiff admitted in his own deposition, that "sick and vacation time were used during my cancer treatment […]," *see* Plaintiff's Deposition Transcript dated January 8, 2024 ("Pl. Dep. T.'), at 121:6-8, attached to the Tecza Cert. as **Exhibit B**, and that Adora Ambrose (the Human Resources Manager) told Plaintiff, "[t]hat I was out of time, I had used all my time in FMLA and I was out of sick days and personal days or vacation days." Pl. Dep. T., 328:12-16. Thus, Plaintiff was aware of the fact that his PTO days were exhausted as part of his medical leave of absence under the FMLA.

Additionally, an email thread that was produced during discovery in *Kertesz 1* between Plaintiff Ambrose, and Charles Creighton dated *November 21, 2019*, which states in relevant part, "When I was forced to go out on FMLA leave [from August – November 2019], ***all of my paid***

8

*vacation and sick days for the year were used up*." *See* November 21, 2019, email thread attached to the Tecza Cert., as **Exhibit C**. It is abundantly clear that Plaintiff was aware that *before his discharge, and during his August 2019 FMLA leave,* that his PTO days were being "used up" while he was on leave. Plaintiff had this knowledge and information long before his original Complaint in *Kertesz 1* was filed. If Plaintiff wanted to assert a claim arising out of the exhaustion of his PTO time during his leave of absence, any such claim should have been asserted in *Kertesz 1*.

The argument by Plaintiff's counsel that Plaintiff either did not, or could not have, learned about the use of his PTO time until the depositions that took place in *Kertesz 1* is absurd. But even if true, Plaintiff's remedy for such discovery is a motion for leave to amend the Complaint in *Kertesz 1*, a motion that Plaintiff did file, but then abandoned once it became apparent the motion would likely be denied. No matter when these claims were first discovered by Plaintiff, these claims all arise out of the exact same operative facts as *Kertesz 1*. They must be brought together in the same action. Maintaining concurrent litigation in different actions, arising out of the same nucleus of facts, with the same parties, flies in the face of the public policy requiring a comprehensive, just and conclusive disposition of the entire controversy in one legal action. *Cogdell*, at 22-23. There simply is no basis for Plaintiff to proceed with this action separately from the pending action in *Kertesz 1* and nothing in the Proposed FAC can change this conclusion

3. *Plaintiff's Complaint Does Not Promote Judicial Efficiency*

It has been long-settled that the Entire Controversy Doctrine requires a litigant to present *all* aspects of a controversy in one single legal proceeding. *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 354 N.J. Super. 229, 240 (App. Div. 2009); *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 207 N.J. 428, 443 (2011) (stating the entire controversy doctrine embodies the "long-held preference that related claims and matters arising among related parties be adjudicated

together rather than in separate, successive, fragmented, or piecemeal litigation."); *Cogdell*, at 26 ("At its most fundamental level inefficiency to further inefficiency is a 'duplication of lawsuits . . . [and] multiple actions each involving the identical controversy and the same witnesses.'").

Here, Plaintiff is wastefully fragmenting his disputes with the Defendants by raising and re-raising claims which are directly related to those already pending in *Kertesz 1*. Counts Two through Seven of the Proposed FAC are nothing more than a regurgitation of the allegations that have already been asserted in *Kertesz 1*, either in the original Complaint, Plaintiff's *first* motion for leave to amend the Complaint (which was denied by the District Court), or Plaintiff's *second* motion for leave to amend the Complaint (which was withdrawn by Plaintiff before it was denied). None of these causes of action are based on newly discovered evidence or information. In particular, Counts Two through Five of the Proposed FAC (which are all wage and hour claims) were already filed in *Kertesz 1* as part of Plaintiff's second motion for leave to amend the Complaint. Before the Court could decide the second motion for leave to amend the Complaint, and *after* Magistrate Judge Clark questioned Plaintiff's counsel about the timeliness problem during a status conference, Plaintiff voluntarily withdrew the motion. Thereafter, Plaintiff filed the exact same claims in State court as a separate, parallel, action. Therefore, the Complaint in this action directly frustrates the notion of judicial efficiency. Tellingly, Plaintiff does not even address the Entire Controversy Doctrine in his motion for leave to amend the Complaint.

### B. Plaintiff's Proposed Amendments To His Claim For Tortious Interference With Prospective Employment Opportunity (Count One) Is Futile Because It Remains Conclusory And Speculative

The Third Circuit does not require courts to entertain endless attempts to amend a complaint where the Plaintiff cannot (or will not) add the necessary facts. The core question is not whether Plaintiff has added paragraphs. The question is whether Plaintiff has added the facts that

are essential to the cause of action. In this case, Plaintiff has not. In *Shane v. Fauver*, the Third Circuit explained that futility is assessed under the same standard as a motion to dismiss, and that leave to amend is appropriate only where amendment would cure the deficiency. 213 F.3d 113, 115 (3d Cir. 2000).

To establish a *prima facie* case for tortious interference with prospective economic employment under New Jersey law, a plaintiff must show: (1) a reasonable expectation of economic advantage for the plaintiff; (2) *interference done intentionally and with malice*; (3) *causal connection between the interference and the loss of prospective economic gain*; and (4) actual damages. *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751-752 (1989) (internal citations omitted) (emphasis added). Plaintiff's Proposed FAC is not better on elements two and three than the original Complaint.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the District Court to examine whether the pleading requirements of Fed. R. Civ. P. 8(a)(2) are met. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2001). Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8(a)(2) does not require a plaintiff to prove his case at the pleading stage by reciting every factual detail, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The short and plain statement required by Rule 8(a)(2) "must provide notice to the defendant of the nature of plaintiff's claim and the basis for the claim." *Sani-Pure Food Labs., LLC v. Biomerieux, Inc.*, 2014 U.S. Dist. LEXIS 160536, at *6 (D.N.J. Nov. 13, 2014) (citing *Twombly*, 550 U.S. at 545). A complaint satisfies this pleading threshold only by alleging "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (emphasis added). Complaints that fail to plead with the specificity required by *Rule* 8, as interpreted by

*Twombly* and *Iqbal*, are subject to dismissal under *Fed. R. Civ. P.* 12(b)(6). *See Sbeih v. Twp. of E. Brunswick*, 2013 U.S. Dist. LEXIS 41219, at *4-5 (D.N.J. Mar. 20, 2013).

    To have a viable claim for tortious interference with prospective employment, the claim must plead more than a generalized hope of future employment. Plaintiff must identify a *reasonable expectation* of receiving a specific economic benefit and that Defendants *knew* of that expectancy and *intentionally and improperly interfered*, proximately causing the loss. *Printing Mart,* 116 N.J. at 751-752. (emphasis added).

    Rather than addressing the pleading deficiencies head-on, Plaintiff chose to double down on conjecture, speculative conspiracy theories, and assumptions about internal processes to which Plaintiff has no factual insights. Here, Plaintiff's original Complaint falls far short of satisfying the pleading standard for intentional interference with prospective employment. Plaintiff does not allege any specific reasonable expectation of employment, and cannot even identify any actual interference by Defendants. Rather, Plaintiff's claim is premised entirely upon his own subjective perception that the interviews he had went well and, therefore, the decision by the prospective employers not to offer a position to Plaintiff must have been the result of some unknown and unidentified interference by Defendants. In the Proposed FAC, Plaintiff did nothing more than add additional conclusory allegations regarding his interview process for a Sales Manage Position with Unicorn Tire ("Unicorn").

    The Proposed FAC alleges that Plaintiff interviewed with Unicorn's HR department on August 14, 2024. *See* Proposed FAC, ¶ 120(i). Plaintiff claims that after a follow-up interview, the interviewer, Entrix Chou, stated to Plaintiff he **intended** to check Plaintiff's references with Defendant Charles Creighton. *See* Proposed FAC, ¶ 120(iv). (emphasis added). Plaintiff further alleges that Chou told Plaintiff that he **would be** having dinner with Paul Alves, President of TAG,

and "would discuss the hiring decision with him." *Id*. (emphasis added). Plaintiff finally contends that Chou at some point must have ***contacted*** Defendant Charles Creighton to check his employment references. *Id*., ¶ 120(v). (emphasis added). Plaintiff then speculates, "*upon information and belief*, during the dinner meeting [which Plaintiff was not present for], Paul Alves reinforced the negative information provided by Defendant Charles Creighton and advised Mr. Chou not to hire Plaintiff." *Id*., ¶ 120(vi). (emphasis added). Plaintiff does not allege he was present at the dinner meeting. Plaintiff does not contend that someone told him what occurred at the dinner meeting. Plaintiff failed to ask anyone at Unicorn why he was not selected for the position. Most importantly, Plaintiff does not allege that someone at Unicorn told him why he was not selected, or that information provided by any Defendant had something to do with the non-selection.

The reasons why Plaintiff was not selected for the position is completely unsubstantiated. Any argument that Defendants caused Plaintiff not to be selected is based on nothing more than conjecture and speculation. Plaintiff does not allege any actual interference by any Defendant. Further, Plaintiff does not allege that the decision by Unicorn to pass over Plaintiff had anything to do with any Defendant. Thus, elements two and three are completely lacking. Plaintiff does not even allege that someone from Unicorn actually spoke to any Defendant. Thus, the Proposed FAC is no better than the original and both of them warrant dismissal as to Count One for failure to plead a claim upon which relief can be granted.

The Supreme Court in *Foman v. Davis* identified "repeated failure to cure deficiencies by amendments previously allowed" as a proper reason to deny leave. 371 U.S. 178, 182 (1962) That factor is routinely applied in the Third Circuit. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (affirming denial where plaintiffs sought amendment after years of

litigation; recognizing "repeated failure to cure deficiencies" as a reason to deny leave). The Third Circuit has repeated the point in unmistakable terms: leave is not automatic, and courts may deny it where the record shows a plaintiff has already had chances to fix the problem and failed to do so. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (affirming denial; listing "repeated failure to cure deficiencies by amendments previously allowed" among reasons to deny leave).

The pleading rules exist to prevent this maneuver. Plaintiffs are required to plead what they know, not what they hope discovery might reveal. Courts are required to disregard conclusions and assess whether the remaining factual allegations plausibly state a claim. When that analysis is applied here—as it must be—the result is unavoidable: stripping away conclusions leaves speculation. Speculation does not state a claim. *Twombly*, at 559; *Iqbal*, at 678-79. Accordingly, as these deficiencies are dispositive under Rule 12(b)(6), the proposed amendments are futile.

### C. NJWPL Wage Claims (Counts Two Through Four) And Unjust Enrichment Claims (Count Five) Have Been Waived By Plaintiff

In Counts Two through Five of the Proposed FAC, Plaintiff argues he only recently discovered possible wage-related claims arising out of the fact that his PTO days were exhausted during his FMLA leave in 2019. This is preposterous. First, Plaintiff argues in Count Four of the Proposed FAC that he was retaliated against in November 2019 because he objected to the improper wage practices. It is axiomatic that if Plaintiff knew about the wage violations and complained about them prior to his discharge, then he could not have only now just discovered them. Furthermore, if Plaintiff knew he made objections about wage practices during his employment, and knew as of November 2019 that his employment was terminated, he could not possibly have just discovered that his discharge was an unlawful act of retaliation. Further, the factual bases for all of these wage-related claims are rooted in information and documentation in

Plaintiff's possession during his employment, at the time of his discharge in November 2019. In

Plaintiff's EEOC charge, filed before the 2020 Complaint in *Kertesz 1*, states:

> To further support Mr. Kertesz's email response, not only is Adora
> the HR manager but she is also responsible for payroll and benefits.
> It is undeniable she was fully aware of the fact that Mr. Kertesz had
> been away from the office for consecutive periods of time prior to
> this incident and had been paid for it.

*See* EEOC Charge dated May 7, 2020, attached to the Tecza Cert. as **Exhibit D**, p.5. The Charge

continues:

> Mr. Kertesz protested his need to take FMLA leave, insisting he was
> able to work. The company ignored his insistence for the simple fact
> they did not want to pay for his approved medical treatment.

*Id.*, p.11.

> It is indisputable the company violated Mr. Kertesz FMLA rights
> when they committed a premeditated retaliatory reassignment,
> demotion and *wage/benefits decrease*. (emphasis added).

*Id.*, p.12. Thus, Plaintiff has known about his claim of alleged improper wage payments since long

before he filed *Kertesz 1*. He chose not to bring these claims and hold them in reserve, a tactic that

Plaintiff and his counsel have been utilizing for more than five years.

Through its decision in *Kertesz 1* on Plaintiff's first motion for leave to amend the case,

the Court set the law of the case that it would not permit claims that Plaintiff could have, and

should have, brought at the inception of *Kertesz 1*. The law of the case doctrine bars a court from

reconsidering matters that have already been decided. *St. Thomas-St. John Hotel & Tourism Ass'n.*

*Inc. v. U.S.,* 357 F.3d 297, 301 (3d Cir. 2004). Here, the writing was on the wall that it was now

too late for Plaintiff to add new claims he had been holding on to, and that all such claims have

been waived. There is no doubt that had Plaintiff attempted to bring Counts Two through Five of

the Proposed FAC in *Kertesz 1* as he should have done, the claims would have been rejected as

untimely.  Plaintiff should not be permitted to circumvent the settled "law of the case," and Fed. R. Civ. P. 15, by simply filing the same untimely claims as an entirely new lawsuit in a different forum.  Nothing in the Proposed FAC can save Counts Two through Five, as they are claims that should have been included many years ago in *Kertesz 1* and would now be rejected as untimely.

### D. **Plaintiff's LAD Claims Of Retaliation (Count Six) And Wrongful Discharge (Count Seven) Are Barred By The Doctrine Of *Res Judicata* And Time Barred**

The law of the case doctrine precludes Plaintiff's motion before the Court even needs to apply the traditional Rule 15 analysis. The law of the case doctrine bars a court from reconsidering matters that have already been decided. *St. Thomas-St. John Hotel,* 357 F.3d at 301. The doctrine posits that when a court decides a rule of law, its decision should continue to govern the same issues in subsequent stages in the same case. *See Daramy v. AG of the United States,* 365 F. App'x 351, 354 (3d Cir. 2010). And while a District Court has the power to revisit its own decisions, "as a rule courts should be loath to do so in the absence of extraordinary circumstances." *Christianson v. Cold Indus. Operating Corp.,* 486 U.S. 800, 817 (1988).

Here, Count Six and Seven are clearly precluded by the doctrine of *res judicata* (as well as the Entire Controversy Doctrine) for two simple reasons: (1) The Court's Opinion in *Kertesz 1* dated June 28, 2023; and (2) The Court's Opinion to the parties' competing motions for summary judgment ("MSJ") in *Kertesz 1* dated September 30, 2025.

First, the Court's June 2023 Opinion disposed of Plaintiff's belated effort to amend his pleading to assert new causes of action (including LAD retaliation claims) based on evidence that the supporting facts had been in Plaintiff's possession the entire time and could not be justified under an "undue delay" analysis. *See* Opinion and Order dated June 28, 2023, attached to the Tecza Cert. as **Exhibit E**, p. 4 ("Plaintiff waited more than two years after his initial complaint was filed and more than five months after the Scheduling Order was entered in matter to add these claims

when he was in possession of the evidence purportedly supporting these claims even before discovery commenced. Therefore, the Court finds that Plaintiff has unduly delayed in seeking to bring these new claims.")

Second, as part of the parties' cross-motions for summary judgment filed in 2024, Plaintiff *again* tried to assert NJLAD claims. Yet, the Court correctly held that there were no NJLAD retaliation claims or wrongful discharge claims:

> The Court agrees with Defendants that Plaintiff's case *does not* include claims under the NJLAD for (1) retaliation; (2) disability discrimination; (3) wrongful discharge; or (4) any other NJLAD claims other than failure to accommodate (Count Four) and aiding and abetting (Count Five). (*See* Defs. Opp. at 5-6.) Plaintiff's Complaint plainly does not include claims for retaliation or discrimination based on Plaintiff's discharge. "Adding claims to a pleading is properly done by amending the complaint; it is too late to introduce an additional claim at the summary judgment stage." *Tirone v. Trella,* No. 03-257, 2007 WL 3170098, at *6 (D.N.J. Oct. 29, 2007) (citations omitted); *see also Balanced Bridge Funding, LLC v. Mitnick L. Off., LLC,* No. 21- 20512, 2024 WL 3949334, at *5 (D.N.J. Aug. 27, 2024) ("Because plaintiff advances a different cause of action in its motion for summary judgment than that alleged in its amended complaint…I decline to consider plaintiff's new legal theory for the first time at summary judgment."); *St. Martin v. W. Windsor Twp. Police Dep't,* 753 F. Supp. 3d 369, 400–01 (D.N.J. 2024) (quoting *Jones v. Treece,* 774 F. App'x 65, 67 (3d Cir. 2019)) ("As a general matter, a plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'") The Court rejects Plaintiff's attempts to shoehorn these claims in now, when Plaintiff, who is represented by counsel, should have included them at the pleading stage.

*See* MSJ Opinion dated September 30, 2025, attached to the Tecza Cert. as **Exhibit F**. (emphasis in original). Thus, Counts Six and Seven of the Proposed FAC are barred by *res judicata* because the Court has already rejected Plaintiff's various efforts to assert these claims.

Nevertheless, nothing has changed since the Court's ruling, other than the passage of additional time. Neither the Proposed FAC nor Plaintiff's brief cites a single piece of new

discovery evidence from Defendants to support such a belated motion. Quite the opposite, the Proposed FAC is based *entirely* on Plaintiff's own version of the facts as derived from the same evidence Plaintiff has possessed since before he filed this lawsuit.

## POINT II

### ALLOWING AMENDMENT WOULD BE UNDULY PREJUDICAL TO DEFENDANTS AT THIS JUNCTURE

Futility and timeliness alone warrant dismissal of Plaintiff's entire Complaint in this action. But prejudice and case management strongly reinforce that result.  After years of litigation and discovery, *Kertesz 1* is finally ready to move forward toward disposition.  Each party has already filed a motion for summary judgment, and these motions have been decided.  Defendants are entitled to a conclusion, rather than the never-ending litigation that Plaintiff and his counsel seem interested in.  Even *Notte v. Merchs. Mult. Ins. Co.*—which reiterates liberal amendment policy— recognizes that prejudice is a central component of the analysis. 185 N.J. 490 (slip op. at 11) (2006).

A District Court must temper its consideration of a motion to amend a complaint by the undue prejudice suffered by the non-moving party. *See Fishbein Family P'ship. v. PPG Indus., Inc.,* 871 F. Supp. 764, 768-769 (D.N.J. 1994). Permitting Plaintiff to pursue an entirely new lawsuit at this stage unfairly prejudices Defendants. If the Court permits this second lawsuit to stand, Defendants will have to serve new discovery on all new claims – to assess the validity of Plaintiff's allegations. After five years of litigation, Defendants should not have to commence the discovery process anew on claims that Plaintiff withheld for this very purpose. The Court should deny Plaintiff's motion for leave to amend and grant Defendants' pending motion to dismiss.

## **CONCLUSION**

Plaintiff's proposed amended complaint is not a genuine attempt to remedy pleading defects. It is an exercise in embellishment—adding words, not facts. The amendments remain conclusory, speculative, and legally insufficient. Because the proposed amendment would be futile and because Plaintiff has failed to cure defects despite notice, the Court should deny Plaintiff's motion for leave to amend in its entirety.

Respectfully submitted,

JACKSON LEWIS P.C.
*Attorneys for Defendants*

By:    */s/ Michael A. Tecza*
        Joseph C. DeBlasio
        Michael A. Tecza

Dated: March 6, 2026

4915-7813-9285, v. 1