**Tyrone Blackburn, Esq.**
**Attorney NJS-ID # 232602020**
**1242 East 80th Street, 3rd Floor**
**Brooklyn, NY 11236**
**(347) 342-7432**
*Attorney for Plaintiff, Erik Kertesz*

|  |  |
|---|---|
| ERIK KERTESZ,<br><br>                              Plaintiff,<br><br>     -against-<br>COLONY TIRE,<br>SCOTT CREIGHTON,<br>CHARLES CREIGHTON,<br>JOHN and JANE DOES 1-10 and<br>ABC CORPS. 1-10<br>                              Defendants. | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>**Case Number: 2:24-cv-08419-JKS-JBC**<br><br>Reply Memo |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT**

Brief By:
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT
ARGUMENT
- POINT I: The Entire Controversy Doctrine Does Not Bar Plaintiff's Claims
- POINT II: Count One (Tortious Interference) Is Well-Pled and Satisfies *Twombly/Iqbal*
- POINT III: Plaintiff's NJWPL and Unjust Enrichment Claims (Counts Two Through Five) Have Not Been Waived
   A. Knowing PTO Was Used Is Not the Same as Knowing PTO Was Used Unlawfully
   B. There Is No Waiver, and the Claims Are Timely
- POINT IV: Plaintiff's NJLAD Claims (Counts Six and Seven) Are Neither Barred By Res Judicata Nor Time-Barred
   A. The Prior Opinions Do Not Create Res Judicata
   B. *Kreidie* Does Not Apply, and There Is No Final Judgment
   C. Count Seven Is a Genuinely New Claim
- POINT V: There Is No Undue Prejudice And The Amendments Are Not Futile

CONCLUSION

## **TABLE OF AUTHORITIES**

CASES
- *Adams v. Gould, Inc.*, 739 F.2d 858 (3d Cir. 1984)
- *Adams v. Hult*, No. 14-cv-120 (D.N.J. 2016)
- *Allen v. New Jersey*, No. 18-cv-14652 (D.N.J. 2020)
- *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bank Leumi USA v. Kloss*, 331 F.Supp.3d 404 (D.N.J. 2018)
- *Bank Leumi USA v. Kloss*, 243 N.J. 218 (2020)
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
- *Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008)
- *Cogdell v. Hospital Center at Orange*, 116 N.J. 7 (1989)
- *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000)
- *DeJoy v. Comcast Cable Communications Inc.*, 941 F.Supp. 468 (D.N.J. 1996)
- *DiTrolio v. Antiles*, 142 N.J. 253 (1995)
- *Henry v. New Jersey Dep't of Human Services*, 204 N.J. 320 (2010)
- *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997)
- *Kreidie v. Secretary, Pennsylvania Dep't of Revenue*, 574 Fed.Appx. 114 (3d Cir. 2014)
- *MaxLite, Inc. v. ATG Electronics, Inc.*, 193 F.Supp.3d 371 (D.N.J. 2016)
- *Morris v. City of Trenton*, No. 11-cv-3052 (D.N.J. 2014)
- *Mystic Isle Development Corp. v. Perskie & Nehmad*, 142 N.J. 310 (1995)
- *O'Brien v. Compass Group USA, Inc.*, No. 18-cv-16808 (D.N.J. 2021)
- *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739 (1989)
- *Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000)
- *Varrallo v. Hammond Inc.*, 94 F.3d 842 (3d Cir. 1996)
- *Wild v. Carriage Services*, No. 15-cv-5040 (D.N.J. 2017)

STATUTES
- New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*
- New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et seq.*

- N.J.S.A. 10:5-13
- N.J.S.A. 34:11-4.10

RULES
- Fed. R. Civ. P. 15(a)(2)
- N.J. Ct. R. 4:30A

**PRELIMINARY STATEMENT**

Defendants' opposition asks this Court to bar claims that did not accrue until 2024, were not discoverable until 2024, and were never adjudicated on the merits in any forum. Three threshold facts defeat every argument Defendants raise.

First, Defendants offer no factual rebuttal to the insurance fraud scheme. There is no declaration from Scott Creighton disputing his sworn admission that Defendants "had to lie" to their insurance carrier, no declaration from Andrew Bergeron, and no business record explaining the fraudulent FMLA paperwork. Defendants' opposition rests entirely on procedural defenses because the substantive facts are unrebutted.

Second, the tortious interference claims are based on conduct that postdates Kertesz I entirely. The first rescission occurred on January 17, 2024, when Ralson Tire withdrew a written job offer within 24 hours of speaking with the Creighton's. No preclusion doctrine can bar a claim that had not yet accrued.

Third, there is no order—from any court—denying leave to amend to add these claims. Magistrate Judge Clark held a pre-motion conference and signaled that amendment would be procedurally disfavored; no motion was ever filed and no ruling was ever issued. Without a final order or judgment, neither res judicata nor waiver can attach.

Rule 15(a) commands that leave to amend "should be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendants have demonstrated neither futility nor undue prejudice. Their opposition should be denied.

**ARGUMENT**

**POINT I: The Entire Controversy Doctrine Does Not Bar Plaintiff's Claims**

The ECD "remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." *Bank Leumi USA v. Kloss*, 243 N.J. 218, 227 (2020); *see also* 331 F.Supp.3d 404, 409 (D.N.J. 2018) (the party whose claim is being barred

"must have had a fair and reasonable opportunity to have fully litigated that claim in the original action"); *Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7, 26-27 (1989). The New Jersey Supreme Court has expressly held that "the entire controversy doctrine does not apply to unknown or unaccrued claims." *Ditrolio v. Antiles*, 142 N.J. 253, 273-74 (1995) (citing R. 4:30A cmt. 2). The *Cogdell* Court adopted the same principle: a party will not be barred from a second action where, because of unusual circumstances, that party could not reasonably have been expected to have raised the claim in the first action. 116 N.J. at 26.

None of the claims in this action could have been brought in Kertesz I. Count One is based on employer rescissions that began on January 17, 2024—more than three years after Kertesz I was filed. The ECD cannot bar claims that had not yet accrued. *Ditrolio*, 142 N.J. at 273-74. Counts Two through Five are predicated on the discovery that Defendants forced Plaintiff to work while claiming he was on FMLA leave, stole his wages by forcing PTO exhaustion, and used the FMLA fiction to defraud two insurance carriers—a scheme not discoverable until Scott Creighton admitted under oath on January 12, 2024 that Defendants "had to lie" to their insurance carrier. Counts Six and Seven rest on the discovery that Defendants' true motivation for termination was the financial burden of Plaintiff's disability-related medical expenses, revealed for the first time when Creighton admitted he "almost had to come out of the pocket to pay for everything for your heart attack that was over 80 thousand dollars." Where an employer contemporaneously supplies a facially legitimate, non-discriminatory explanation for an adverse action, the employee is not reasonably expected to suspect discriminatory intent, and the discovery rule may toll the statute of limitations. *See Henry v. N.J. Dep't of Human Servs.*, 204 N.J. 320, 332 (2010). Defendants cite *Cogdell* extensively but ignore the very exception it establishes. Plaintiff had no "fair and

5

reasonable opportunity" to litigate these claims because the critical facts were in Defendants' exclusive control and were actively concealed.

The Court's own procedural posture reinforced that barrier. When Plaintiff raised amending in Kertesz I, Magistrate Judge Clark held a pre-motion conference and signaled that amendment would be disfavored given the age of the docket. No motion was filed; no order issued. Plaintiff respected that guidance and filed separately. It would be unfair to apply preclusion doctrines when a plaintiff was unable to pursue certain claims or obtain complete relief in the initial proceeding due to jurisdictional or procedural limitations. *Morris v. City of Trenton*, No. 11-cv-3052 (D.N.J. 2014). The ECD serves "fairness to the parties," *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 323 (1995), and there is nothing fair about allowing Defendants to conceal a fraud scheme and then invoke the ECD to bar claims that the concealment was designed to prevent.

**POINT II: Count One (Tortious Interference) Is Well-Pled and Satisfies *Twombly/Iqbal***

To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must plead: (1) a reasonable expectation of economic advantage; (2) interference done intentionally and with malice; (3) a causal connection between the interference and the loss of prospective gain; and (4) actual damages. *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751-52 (1989); *Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996) (citing *Printing Mart*); *DeJoy v. Comcast Cable Commc'ns Inc.*, 941 F.Supp. 468, 476 (D.N.J. 1996). The Proposed FAC satisfies each element.

The FAC identifies at least twelve specific employers by name. At Ralson Tire, a written offer was extended after three interviews with the President and Global President and rescinded within 24 hours of Mr. Mayfield speaking with the Creightons; the position was reposted. At Unicorn Tire, Plaintiff completed three interviews including an in-person meeting with the owner, who stated he would check references with Charles Creighton and have dinner that evening with

6

Paul Alves, President of TAG; the offer was rescinded within 24 hours. At Simple Tire, Tire Agent, Sumitomo, and at least seven other employers, the identical pattern repeated: positive interviews, the prospective employer's announced intent to contact the Creightons, contact with the Creightons, and an offer rescission or complete silence within 24 hours—with no explanation and the position reposted. This is not "generalized hope" or "speculation." It is a documented pattern of systematic interference with the Creightons as the common denominator in every rescission. *See MaxLite, Inc. v. ATG Electronics, Inc.*, 193 F.Supp.3d 371, 385 (D.N.J. 2016) (exercising personal jurisdiction based on plaintiff's showing of defendant's purposeful interference directed at New Jersey).

Defendants argue Plaintiff cannot identify the specific words spoken during private reference calls. That standard cannot be met at the pleading stage, and Defendants know it. The substance of private reference calls is exclusively within Defendants' control. "Upon information and belief" pleading remains appropriate where facts are peculiarly within the opposing party's knowledge. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008). The plausibility standard under *Twombly* and *Iqbal* requires factual content sufficient to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Twelve employers, twelve rescissions, twelve instances of Creighton contact, twelve refusals to explain—the probability that this pattern arose independently is vanishingly small. The precise argument Defendants advance was rejected in *Wild v. Carriage Services*, No. 15-cv-5040 (D.N.J. 2017), where the court held that providing details about submitting applications and being denied employment was sufficient and that it was reasonable to infer, viewing allegations holistically, that the plaintiff applied for and was denied employment with specific entities.

The FAC here goes far beyond *Wild*, naming twelve employers, identifying the specific individuals involved, and documenting the identical 24-hour rescission pattern. Defendants had the motive—preventing Plaintiff from exposing the insurance fraud—and the means through Colony Tire's board-level influence within the TAG network, satisfying the plausibility threshold. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (requiring "enough facts to state a claim to relief that is plausible on its face").

**POINT III: Plaintiff's NJWPL and Unjust Enrichment Claims (Counts Two Through Five) Have Not Been Waived**

   A. <u>Knowing PTO Was Used Is Not the Same as Knowing PTO Was Used Unlawfully</u>

In 2019, Plaintiff knew his sick time and vacation time were being exhausted during cancer treatment (Tecza Cert. Ex. B, Kertesz Dep. at 121) and that his pay was docked for a medical appointment (Tecza Cert. Ex. C, Nov. 22, 2019 email). What he did not know until 2024 is that Defendants were simultaneously telling insurance carriers he was on FMLA leave while requiring him to work full-time, that he was therefore entitled to regular wages rather than PTO deductions, and that the entire scheme was designed to defraud Cigna and EBU. The actionable wrong is the forced-FMLA-while-working wage theft scheme, and it was not discoverable until Scott Creighton admitted under oath that Defendants "had to lie" to their carrier. Knowing your PTO was used does not mean knowing the PTO usage was part of a fraud scheme—just as knowing your doctor billed you does not mean knowing the billing was Medicare fraud. The distinction between knowing a fact and knowing that fact constitutes a legal wrong is precisely what the discovery rule addresses.

Defendants' own exhibits confirm this distinction. The deposition excerpts (Tecza Cert. Ex. B) show Plaintiff asking Adora Ambrose why this was the first time that senior management had decided to handle it this way—confirming awareness of a payroll irregularity, not awareness of insurance fraud. The EEOC charge (Ex. D) is a pro forma administrative complaint about FMLA interference in general terms; it says nothing about forced labor during purported leave, wage theft

8

through PTO substitution, or fraudulent insurance submissions. Kertesz I itself contains no allegations of wage violations or FMLA fraud, which distinguishes this case from *O'Brien v. Compass Group USA, Inc.*, No. 18-cv-16808 (D.N.J. 2021), where the plaintiff's original complaint demonstrated awareness of time-recording discrepancies from the outset.

B. <u>There Is No Waiver, and the Claims Are Timely</u>

Defendants' "waiver" argument rests on the fact that no motion to amend was litigated in Kertesz I. But no motion was ever filed and no order was ever issued. Magistrate Judge Clark signaled during a pre-motion conference that amendment would be disfavored; Plaintiff respected that guidance and filed separately. That is not waiver—waiver requires the intentional relinquishment of a known right. Even if a motion had been filed and denied on procedural grounds, that would not preclude a subsequent action. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("[d]enial of a motion to amend will not inevitably preclude subsequent litigation of those claims set out in a proposed new complaint. . . . Only denial of leave to amend on the merits precludes subsequent litigation of the claims in the proposed amended complaint."). A fortiori, declining to file a motion after discouraging pre-motion guidance cannot constitute waiver.

The claims are also timely as a matter of arithmetic. The six-year NJWPL statute of limitations, N.J.S.A. 34:11-4.10, applies. The wage violations occurred between August 14 and November 11, 2019. This action was filed on July 11, 2024—well within six years. The discovery rule provides an additional and independent basis for timeliness but is not necessary for the wage claims. *See Allen v. New Jersey*, No. 18-cv-14652 (D.N.J. 2020) (holding that complex questions regarding statute of limitations, tolling, and relation back of amendments are better suited for substantive dispositive motion practice rather than being decided at the amendment stage).

9

**POINT IV: Plaintiff's NJLAD Claims (Counts Six and Seven) Are Neither Barred By Res Judicata Nor Time-Barred**

   A. <u>The Prior Opinions Do Not Create Res Judicata</u>

The June 2023 Opinion (Tecza Cert. Ex. E) denied leave to add an ERISA claim, ADA claims, and FMLA claims—none of which are the claims asserted here. This action asserts tortious interference, NJWPL violations, unjust enrichment, NJLAD retaliation, and NJLAD wrongful termination. These are different claims with different elements, different statutes, and different factual predicates. The June 2023 Opinion addressed none of them. Moreover, that denial was a procedural case-management ruling on timeliness of amendment, not a merits adjudication. Under *Curtis*, 226 F.3d at 139, only denial of leave to amend on the merits precludes subsequent litigation of the claims in the proposed amended complaint. *See also Adams v. Hult*, No. 14-cv-120 (D.N.J. 2016) (holding that a time-bar dismissal had no bearing on the plaintiff's ability to assert timely, properly pleaded allegations regarding continued violations in any future amended complaint). The September 2025 Opinion addressed invasion of privacy and failure-to-accommodate claims in *Kertesz I*—again, entirely different claims. It did not create res judicata as to claims never before the Court. Defendants invoke law-of-the-case, but that doctrine applies within the same case; this is a different case with a different docket number and different claims. *Morris v. City of Trenton*, *supra*.

   B. <u>*Kreidie* Does Not Apply, and There Is No Final Judgment</u>

*Kreidie v. Secretary, Pennsylvania Dep't of Revenue*, 574 Fed.Appx. 114 (3d Cir. 2014), held that a procedural dismissal silent as to prejudice operated as an adjudication on the merits under Rule 41(b) and applied claim preclusion to claims that had been before the court. That is a fundamentally different procedural posture from this case. No motion was ever filed to add these NJLAD claims, no order was ever issued, and no claims existed in any pleading to be dismissed. There is nothing to which res judicata can attach. Moreover, *Kertesz I* has no final judgment—the

10

invasion of privacy claims survived summary judgment and remain pending. Res judicata requires finality, and there is none.

   C. Count Seven Is a Genuinely New Claim

Count Seven alleges wrongful termination based on the theory that Defendants terminated Plaintiff because the financial burden of his disability-related medical expenses made him a liability. This is predicated on Scott Creighton's January 2024 admission that he "almost had to come out of the pocket" to pay for medical expenses totaling $1,098,356.89. This is not a repackaged failure-to-accommodate claim. It is a fundamentally different theory of liability—that Defendants terminated Plaintiff because of the economic cost of his disability—and it was not and could not have been asserted before the 2024 depositions. Even calculated from the date of termination on November 25, 2019, the filing on July 11, 2024, falls within the six-year NJLAD statute, N.J.S.A. 10:5-13. The discovery rule provides an additional basis: under *Henry*, 204 N.J. at 332, where an employer contemporaneously supplies a neutral, non-discriminatory explanation for an adverse action, an employee may not reasonably be expected to suspect that the true motivation is discriminatory, and the statute does not begin to run until the employee has a reasonable basis to suspect discrimination. The statute did not begin to run until the 2024 depositions.

**POINT V: There Is No Undue Prejudice and The Amendments Are Not Futile**

Defendants' prejudice argument amounts to the complaint that they will have to defend against legitimate claims. That is not "undue" prejudice within the meaning of Rule 15. *See Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (analyzing prejudice under the Rule 15 liberal amendment standard). Much of the relevant discovery already exists from Kertesz I—the depositions of Scott Creighton, Charles Creighton, Andrew Bergeron, Adora Ambrose, and Plaintiff have been taken, and third-party production from Cigna, EBU, and CoreSource is

11

complete. The marginal burden is modest. To the extent any burden exists, Defendants created it by concealing their fraud scheme and systematically blacklisting Plaintiff for years.

Defendants' futility argument fares no better. An amendment is futile only if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Proposed FAC is supported by sworn deposition admissions, five years of documentary discovery, and third-party corroboration. Whatever ambiguity Defendants manufacture in the limitations analysis is better suited for substantive dispositive motion practice rather than being decided at the amendment stage. *Allen*, *supra*. Under Rule 15(a)(2), the court "should freely give leave when justice so requires." Defendants have not demonstrated that these claims are clearly futile, and amendment should be permitted.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion for leave to file the First Amended Complaint and deny Defendants' opposition in its entirety.

<u>Dated</u>: March 10, 2026

/s/<u>Tyrone A. Blackburn</u><br>Tyrone A. Blackburn, Esq.<br>T. A. Blackburn Law, PLLC<br>E: tblackburn@tablackburnlaw.com

Cc: All counsels of record via ECF